

**SO ORDERED.**

**SIGNED this 08 day of July, 2010.**

_Dale L. Somers_
**Dale L. Somers**
**UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

In re:

**CRESCENT OIL COMPANY, INC.,**                          **Case No. 09-20258**
**et al.,**

        **Debtors.**                          **Chapter 11**

---

### MEMORANDUM OPINION AND ORDER DENYING
### GRAND SLAM'S MOTION FOR REJECTION OF
### NONRESIDENTIAL LEASE OF REAL PROPERTY

After a §363 sale of substantially all the Debtors' assets, Debtor Crescent Oil Company,

Inc., filed a post-sale motion to assume and assign certain operating agreements pursuant to 11

U.S.C. §365 [Doc. No. 1125]. Grand Slam, LLC, objected and filed its own motion for an order

deeming its agreement with Debtor rejected under §365(d)(4)(A) because the agreement was a

lease of nonresidential real property [Doc. No. 1224]. The Court heard legal argument and

evidence regarding whether the agreement is a license, lease of personalty, or lease of

nonresidential real estate; whether the agreement had been previously accepted or rejected;

whether laches or estoppel apply; and how classifying the agreement as an "Excluded Asset" in

the §363 sale impacted the buyer, who requested Debtor to assume and assign the agreement

four months after closing.

For the reasons discussed below, the agreement is an executory contract in the nature of an irrevocable license, §365(d)(4) is inapplicable, and although the Court cannot order rejection of the agreement, the Debtor is ordered to file the necessary pleadings to either assume or reject the agreement within 10 days of the date of this Order.

## Background

Debtor Crescent Oil filed its voluntary petition for relief under Chapter 11 on February 7, 2009. Prior to the filing date, Debtor entered into a Real Estate Lease and Motor Fuel Marketing Agreement (the "Agreement") with Grand Slam by which Debtor provided gasoline and gasoline dispensing and marketing equipment to Grand Slam's convenience store in exchange for half the net profits derived from the fuel sold.

On April 2, 2009, the Court entered an order approving the procedures for a §363 sale of substantially all Debtors' assets. As part of the sale process, Debtors filed their notice of cure amounts for executory contracts and unexpired leases on July 10. The cure notice gave all parties an opportunity to object to proposed cure amounts. Grand Slam did not object, and an order establishing cure amounts was entered on August 4. On August 6, Florida Sunshine Investments I, Inc. ("Buyer"), submitted a bid to purchase substantially all of Debtors' assets in the form of an Asset Purchase Agreement (the "APA"). The Buyer was the successful bidder at the August 13 auction. The Court approved the sale on August 18. The sale closed on September 4. The deadline to assume or reject nonresidential real property leases under §365(d)(4) expired September 7.

Under the APA, Buyer had a right to an assumption and assignment of all Debtors' leases and executory contracts for the purchase price, subject to Buyer's obligation to pay cure

10.07.08 Crescent Grand Slam Order.wpd

amounts.  Buyer could also exclude agreements pursuant to Section 6.10 of the APA.  Section

6.10 of the APA allowed Buyer five business days prior to closing to remove executory contracts

from the Assumed Assets list and move them to the Excluded Assets list.  Contracts so removed

could not be considered an Assumed Asset and no adjustment to the purchase price was made.

The APA did not allow time for Buyer to change its mind.  At closing, the Debtor could not

assign the Excluded Assets to Buyer.  (APA Sec. 2.01(b)).  Debtor filed a notice of Excluded

Assets on September 3 and filed what it called a clarifying notice on September 16.  Grand

Slam's Agreement was listed in both notices.  In the notices, Debtor described the Agreement as

a "DODO," a defined term under the APA which means "a service station in which Sellers [the

Debtors] have no real estate interest, but which is operated by a Dealer to whom Sellers supply

fuel pursuant to a Fuel Supply Agreement."  Grand Slam did not object to the Excluded Assets

notices.  Grand Slam did not immediately move for an order approving or compelling the

rejection of the Agreement after the Excluded Assets notices were filed.  Instead, four months

later on January 22, 2010, Debtors filed a motion to assume and assign agreements previously

designated as Excluded Assets in the APA.  In the motion to assume, Debtors claimed a post-

closing shift of certain agreements from the Excluded Assets list to the Assumed Assets list was

justified because the complexity and time constraints leading up to closing curtailed a thorough

review of all Debtors' assets by the Buyer.  Grand Slam's Agreement was now included in the

list to be assumed and assigned.  The motion then states:

> Debtor now seeks to assume and assign the Assumed Operator Agreements to the
> Purchaser as an accommodation to the Purchaser . . . . The Assumed Operator
> Agreements are of no value to Debtors, they could have been included as part of the Sale
> for the purchase price paid by the Purchaser . . . .

The Buyer agreed to cure any agreements removed from the Excluded Assets list pursuant to the

January 22 motion; however no additional benefit to the estate was contemplated.  Grand Slam

10.07.08 Crescent Grand Slam Order.wpd

objected and argued its Agreement was a nonresidential lease of real property, which was deemed rejected pursuant to §365(d)(4) on September 7, 2009.  Grand Slam then filed a motion for rejection of the Agreement [Doc. No. 1224], which is the subject of this Order.

### Facts Pertaining to the Agreement

The Agreement is titled a Real Estate Lease and Motor Fuel Marketing Agreement.  The Agreement relates to Grand Slam's convenience store located at 215 E. 6th in Kansas City, Missouri.  Under the Agreement, Grand Slam leased to Debtor a portion of the premises "as may be necessary and useful for the purposes of the installation, monitoring, inspection, operation, repair, maintenance and replacement" of motor fueling equipment.  The term of the Agreement is 15 years with three options to renew in additional 5-year increments.

The Agreement required Debtor to pay rent to Grand Slam equal to one-half the profits (retail price minus laid-in-cost) derived from the sale of motor fuels from the convenience store. The Agreement refers to this payment as both a rental and a commission.  However, after Debtor supplied the equipment and fuel, it was Grand Slam who actually collected the money from the fuel sales and remitted the proceeds to Debtor less Grand Slam's commission.  The Agreement provides for non-exclusive possession, and the portion of the premises leased to Debtor is simultaneously used by Grand Slam for its convenience store operation.  After Debtor's bankruptcy filing, Debtor ceased supplying motor fuel to Grand Slam.  Grand Slam found another supplier and ceased paying Debtor any revenues from fuel sales.

The parties dispute ownership of the motor fueling equipment.  On August 24, 2009, Debtor and P.B. Hoidale Co., Inc. ("Hoidale"), filed an agreed order stating the equipment was owned by Hoidale and leased by Debtor.  The Hoidale equipment lease was also an Excluded Asset.  However, Debtor argues it recently discovered documents indicating the equipment lease

- 4 -

was really a financing agreement for Debtor's purchase of the equipment. Coincidentally, on January 22, 2010, the same day Debtor moved to assume the Grand Slam Agreement, Grand Slam entered into a purchase agreement for the equipment with Hoidale. The Hoidale dispute, while related, is not part of the pending issues.

## Discussion

### A.     §365 Generally

Section 365(d)(2) allows debtors to assume or reject an executory contract at any time before plan confirmation. However, the court may order a debtor to make its decision "within a specified period of time" if a party to a contract requests such relief. If the agreement is a lease of nonresidential real property, debtor's time to assume the lease is limited under §365(d)(4)(A). For all other executory contracts, debtor's decision to assume or reject is voluntary, not mandatory. An executory contract not assumed in Chapter 11 is not deemed rejected.[1] If the debtor takes no action and the party to an executory contract does not seek an order requesting a determination of whether the contract will be assumed or rejected, the contract remains intact and property of the estate.[2] Only the trustee or debtor-in-possession has the right to decide, subject to court approval, whether to assume or reject an executory contract.[3] If done prior to plan confirmation, the majority view is the procedure requires a formal notice filed with the court and is only effective upon entry of an order approving such motion.[4] The concept of implied assumption or rejection of executory contracts has been soundly rejected.[5] A court order

---

[1] *In re JZ, L.L.C.,* 371 B.R. 412 (B.A.P. 9th Cir. 2007) (allowing for a "ride-through" option if contract is not addressed pre-confirmation; notes 1st, 2nd, and 5th Circuits hold the same).

[2] *In re Hernandez,* 287 B.R. 795 (Bankr. D. Ariz. 2002).

[3] 11 U.S.C. §365(a); *In re Dehon, Inc.,* 352 B.R. 546, 558 (Bankr. D. Mass. 2006).

[4] Fed. R. Bankr. P. 6006 and 9014; *In re GCP CT School Acquisition, LLC,* – B.R. –, 2010 WL 2044871, at *6 ( B.A.P. 1st Cir. May 24, 2010); *In re DBSI, Inc.,* 409 B.R. 720 (Bankr. D. Del. 2009).

[5] *In re Family Snacks, Inc.,* 257 B.R. 884 (B.A.P. 8th Cir. 2001).

10.07.08 Crescent Grand Slam Order.wpd

is mandated for the effective assumption or rejection under the statute.[6]  Equitable doctrines are available in unusual circumstances to effect rejection retroactively for leases of nonresidential real property.[7]

### B.    License versus Lease of Real Property

Whether the Agreement is deemed rejected as of September 7, 2009, depends upon whether it is a lease of nonresidential real property or some other type of executory contract such as a license or lease of personalty.  The Agreement is governed by Missouri state law.  The mere fact an agreement is denominated as a lease and uses technical words of demise is not dispositive of the issue if the agreement, in substance, shows it is something different.[8]  While Grand Slam argues it has a lease, Debtor argues the Agreement is a license.  A license merely entitles a party to use the land of another for a specified purpose, subject to the management and control retained by the owner.[9]  A license does not convey an interest in the land.  In contrast, a lease conveys an interest in the land and transfers possession of the land, to the exclusion of the owner.  Exclusive possession of the premises is an essential characteristic of a lease.[10]  In other words, a license may involve the exclusive occupation of the land by the licensee so he may perform his permitted act, but a lease involves the right of possession and exclusive occupation of the land for all purposes not prohibited by its terms.[11]

Another distinguishing characteristic between a license and a lease is revocability.[12]  A bare license may be revoked at any time by the grantor and is therefore not assignable.  Under

---

[6]  *Counties Contracting and Const. Co. v. Constitution Life Ins. Co.,* 855 F.2d 1054, 1060 (3rd Cir. 1988).

[7]  *GCP CT School Acquisition, LLC,* 2010 WL 2044871, at *5.

[8]  *Wandell v. Ross,* 245 S.W.2d 689, 692 (Mo. Ct. App. 1952).

[9]  *Id.*

[10]  *Id.*

[11]  *Gage v. City of Topeka,* 205 Kan. 143, 146 (1970).

[12]  *Kansas City Area Transp. Authority v. Ashley,* 485 S.W.2d 641, 644 (Mo. Ct. App. 1972).

10.07.08 Crescent Grand Slam Order.wpd

certain circumstances, an irrevocable license may be deemed a lease.[13]  However, a license may

be irrevocable for a term of years without granting the licensee exclusive possession of the

premises.  Such a license is more than a bare license and is assignable.  A license does not

become a lease just because it is for a term of years and the consideration paid for the privilege is

paid in monthly installments.[14]

Under the Agreement, Debtor's presence on the premises is limited to the motor fueling

equipment, which is operated and controlled by Grand Slam.  Grand Slam monitors the

equipment, advises Debtor when it needs more fuel or maintenance, and collects and remits the

fuel sale proceeds.  Debtor enters the premises to deliver fuel and to perform maintenance on the

equipment.  Debtor exerts no rights of possession over the real property.  Debtor's equipment

occupies a space on the real property, but the Agreement limits Debtor's occupancy to the

specific purpose of installing and maintaining the motor fueling equipment.  Debtor is not

authorized to perform any other acts on Grand Slam's property.  Accordingly, the Agreement is

an executory contract in the nature of an assignable license and marketing agreement and not a

commercial real estate lease.  The Agreement was not deemed rejected as of September 7, 2009,

and §365(d)(4)(A) does not apply.

### C.	Whether Further Administration of Grand Slam's Agreement Is Barred by Equitable Considerations

The business judgment standard sets the bar for whether the court should approve a

debtor-in-possession's decision to assume or reject an executory contract.  The business

judgment rule requires the estate to assume a contract only where doing so will be to its

---

[13]  *Id.*

[14]  *Id.; Smyre v. Bd. of Comm'rs of Kiowa County,* 89 Kan. 664 (1913).

10.07.08 Crescent Grand Slam Order.wpd

economic advantage.[15]  In deciding whether to force the debtor-in-possession to determine whether to assume or reject a contract before plan confirmation, the court considers (1) damage to the other party beyond compensation available under the Code; (2) the importance of the contract to reorganization; (3) whether debtor has had sufficient time to decide; and (4) whether the exclusivity period has expired.[16]  Besides the damages to the other party, most considerations involving a §365 decision revolve around, and favor, the debtor's estate. Equitable doctrines have been employed to retroactively effect rejection of a nonresidential real property lease to relieve the debtor of a burdensome administrative expense; however, Grand Slam does not cite and the Court could not find one case where equitable considerations deprived a debtor of its ability to determine whether to assume or reject a contract.  Rather, contracting parties have other remedies including:  requesting an expedited determination under §365(d)(2); seeking stay relief to terminate its agreement; or successfully objecting to motions which may affect their agreements (including sale motions).

In this case, Grand Slam, wishing to move on after being excluded from the only contemplated §363 sale, should have sought action to have the Agreement released from the estate by court order.  However, Debtor is not free to give away assets without a benefit to the estate.  As these issues were originally postured, Debtor proposed to assume and assign the Agreement as part of the original APA with no further consideration.  The August §363 sale is over and final.  The APA allowed the Buyer time to remove executory contracts from the assumed assets, but it did not allow time for the Buyer to assume more assets after closing under the same APA.  At the time of sale, no other §363 sale was contemplated or proposed.  Grand

---

[15] *In re Penn Traffic Co.,* 524 F.3d 373, 383 (2nd Cir. 2008).
[16] *In re Hernandez,* 287 B.R. 795, 806 (Bankr. D. Ariz. 2002).

- 8 -

10.07.08 Crescent Grand Slam Order.wpd

Case 09-20258   Doc# 1317   Filed 07/08/10   Page 8 of 10

Slam could have reasonably believed to its detriment its Agreement, as an Excluded Asset, was rejected. Under these circumstances, four months after closing could be considered an unreasonable delay in seeking to reclassify an Excluded Asset under the APA, which was the subject of a final sale order. In this limited context, estoppel and laches could apply; however, the business judgment standard still controls the decision. In its motion to assume, Debtor states the Agreement is of no value to Debtors, and it is not worth an increase in the purchase price. Debtor is admittedly seeking to assume these contracts as "an accommodation" to the Buyer. Under these facts, an accommodation to the Buyer does not measure up to the business judgment standard. The fact the Buyer wants to assume additional agreements bestows some value on them. Such value should be garnered for the benefit of the estate.

Debtors' motion to assume is not before the Court; Grand Slam's motion for rejection is. The Court cannot order rejection under §365, but it can require the Debtor to take action in a specified period of time. Even if the Court were to deny Debtors' motion to assume, an order denying assumption does not equal an order approving rejection. The Debtor still has the option to administer this asset for the benefit of the estate. At the eleventh hour, and in the last paragraph of its trial brief, Debtor revealed it is negotiating additional consideration for the Agreement and certain other Excluded Assets. Another §363 sale appears to be contemplated. Accordingly, Grand Slam's motion for rejection is denied; however, relief under §365(d)(2) is appropriate. Debtor is ordered to file the pleadings contemplated to accomplish a sale, assumption and assignment of the Agreement within 10 days of this Order. Under those pleadings, the Court shall consider whether Debtors satisfy the business judgment standard, including payment of associated cure costs and other §365(b)(1) requirements.

IT IS SO ORDERED.

10.07.08 Crescent Grand Slam Order.wpd

###

DALE L. SOMERS
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS

10.07.08 Crescent Grand Slam Order.wpd